11 N. Y. Supp. 504. If the appeal is proper, the order should be sustained. It is true that the formal service of the judgment was not made until after the transfer to O'Connell, but this transfer was made upon avowed purpose of rendering the judgment idle. He actively interfered to make a judgment of the court nugatory, and therefore was guilty of a contempt. King v. Barnes, 113 N. Y. 476, 21 N. E. Rep. 182. The forbidden acts were continued after the service of the order.

The order should be affirmed, with costs and disbursements.

---

(4 Misc. Rep. 616; mem. report without opinion.)

CONVILLE v. SHOOK et al.

(Superior Court of New York City, General Term. July 3, 1893.)

1. PARTNERSHIP—ACCOUNTING—INTEREST AND TAXES.
    Where a partner is entitled to a certain per cent. of the profits for each year, it is proper, in determining such profits, to charge off the amount of interest on firm debts and taxes.

2. SAME—DEPRECIATION IN PLANT.
    Where a partner in a manufacturing concern is entitled to a certain per cent. of the profits for each year, it is proper, in estimating such profits, to charge off a certain per cent. of the cost of the plant each year, for depreciation in the value thereof.

Appeal from judgment on report of referee.

Action by Thomas Conville against Sheridan Shook and another. From a judgment for defendants, plaintiff appeals. Affirmed.

The opinion filed by the referee is as follows:

The plaintiff claims he is entitled to recover from the defendants the sum of $6,779.40 for his share of the profits of the business during the year ending February 28, 1886. The defendants claim that the plaintiff's share of the profits of the business during that year was greatly less than the sum claimed by the plaintiff; that they have discovered numerous errors in the amounts and calculations, according to which the plaintiff had received from them sundry sums of money for his share of the profits of the business during previous years; that the sums so paid during those years exceed the true and correct amount to which the plaintiff was entitled, and that such overpayments, being set off against the plaintiff's share of the profits of the last year, entirely wipe out any indebtedness on their part for that year, and leave the plaintiff still indebted to them in large amount for such overpayments. The plaintiff has rested his case, and a motion is made in behalf of the defendants for a dismissal of the complaint on the ground that, upon the evidence as it stands, the defendants are not indebted to the plaintiff, but that, on the contrary, the plaintiff is indebted to the defendants. The chief witness for the plaintiff is Mr. James D. Lyon, who was the book-keeper for the defendants during the whole period of the plaintiff's employment by the defendants. He states that the amount to which the plaintiff is entitled for his share of the profits of the last year's business is $6,779.40, and he testifies that he arrived at the amount so stated from an examination of the books of the defendants' firm. The process by which the witness arrives at this conclusion that the sum above mentioned is a correct statement of the plaintiff's share of the last year's profits is as follows: The defendants' books show that in closing the books for the year ending February 28, 1886, the amount of profits was ascertained to be the sum of $11,563.31, of which 90 per cent. belonged to Mr. Shook and Mr. Everard in equal shares, being $5,203.49 to each, and the remaining 10 per cent., $1,156.33, to Mr. Conville, the plaintiff. After the closing of the books the plaintiff was cred-

ited with the further sum of $1,393.06 for his share of the .estimated profits upon sales of goods which had been manufactured under the management of the plaintiff, and which were still unsold on February 28, 1886, when the plaintiff's employment as brewer terminated. The witness Mr. Lyon makes the defendants' books the basis of his testimony to support the plaintiff's claim. He enumerates eight separate entries which appear in the journal in the account by which the profits of the last year were ascertained, and which he claims were improperly placed in the account. If those eight entries should be taken out from the account the plaintiff's share of the profits would be (I calculate the additions and subtractions) $6,796.36, which is slightly in excess of the amount as stated by the witness. The inquiry, therefore, arises concerning those eight entries or items in the defendants' journal. If it appears by the evidence in the case that the entire aggregate of those items is properly chargeable against the plaintiff, then the defendants' final figures are correct, and the plaintiff is entitled to the amount shown in his favor by the books, viz. $2,539.49, and no more. If some of those eight items are properly chargeable and others not, the said sum of $2,539.49 should be increased accordingly. The defendants claim, however, not only that the plaintiff is properly chargeable with all of those items, but also that it appears by the testimony that the witness Mr. Lyon omitted in the keeping of these books to charge off other sums which should have been charged off, and that, if 10 per cent. of those sums should be charged against the plaintiff, the amount of such 10 per cent. will not only wipe out the said sum of $2,539.48, but will bring the plaintiff in debt to the defendants. It becomes necessary, therefore, to examine minutely into the items in dispute, in order to ascertain upon which side the indebtedness exists, and to what amount.

First. Charge of $5,330.68, Taxes, Interest, etc.  The defendants have charged off the sum of $5,330.68 as follows: "Expense account, debtor to stock account, taxes, interest on mortgages, etc., on property, that have been charged to a stock account, $5,330.68." The witness Mr. Lyon admits that of that amount the sum of $4,950.52, which had been paid from time to time for taxes upon the brewery property, had been improperly charged to stock account. The plaintiff's witness Mr. Waddell, an expert accountant, also states that such items should properly have been charged to expense account. The witness Mr. Lyon also states that it had been his intention to charge back that amount if he had had the making up of the books at the end of the last year. The defendants were therefore right in charging back this item, but upon the evidence as it stands the amount should have been $4,950.52, instead of $5,330.68. It may be that the larger amount is correct, but for the purposes of the present motion the amount must be stated at $4,950.52.

Second. Cask Account.  The testimony shows without contradiction that during the whole 10 years covered by the account Mr. Lyon had been in the habit of charging to cask account the money expended for repairing the casks .and barrels used in the business, except the sums expended for such repairs as were done in the brewery by the men employed there. The last-mentioned amount being charged to expense account, the larger part by far of the amounts expended for such repairs was charged to cask account, and went into the general summary of the accounts in the journal, not as an expenditure, but as an asset, excepting that at the end of each year cask account was credited with 10 per cent. of the balance of that account at that time. The defendants have now charged to expense account the amounts which. at the end of each year, were so journalized as assets, being for the expenditure during that year, for repairs to casks and barrels, less the 10 per cent. above mentioned. The plaintiff claims that the original entry was correct, and that the defendants improperly charged back the items in question, amounting in the aggregate to the sum of $14,262.48. The expenditures for the purchase of new casks were concededly a proper charge to cask or stock account, but I cannot see that upon any fair principle the sums expended from time to time in the repairs of old casks could properly be so charged as to create an asset, instead of indicating an expense. Both Mr. Lyon and Mr. Waddell seek to justify the charge, but their views seem to

me illogical. Without enlarging upon this point, it is sufficient to say that, in my opinion, the defendants properly charged back the balance of the sums which had been charged, as I hold, improperly to cask account, amounting, as above stated, to the sum of $14,263.48.

Third. Rebates and Allowances. The testimony shows that the defendants' firm were in the habit of allowing to their customers percentages upon the scheduled prices of their goods, varying in the cases of different customers, and also to make special allowances to the customers of varying amounts, according to special circumstances. The defendant Everard had exclusive charge of the matter of fixing such percentages and allowances, which were necessarily arbitrary in amount, according to his judgment in each particular case. In making up the last account some of such percentages known as "rebates," which Mr. Lyon had omitted to journalize, were charged off, and Mr. Lyon himself admits the correctness of such charges. He claims, however, that the percentages and allowances charged in the last account were excessive, but what his claim in that regard simply amounts to is this: that he thinks that if he, instead of Mr. Everard, had been arbiter, the amounts would have been less by about $4,000, and he therefore asks a credit for the plaintiff of $4,000. A mere statement of the plaintiff's contention in this regard is sufficient to show that it cannot be sustained, and that the credit of $4,000 claimed by him cannot be allowed.

Fourth. Bad Debts. The plaintiff claims that his account is improperly charged with "bad debts" to the amount of $4,593.89, but the evidence fails to show that any of the claims so charged have been paid, or are collectible. The amount, therefore,—$4,593.89,—is properly charged in that respect.

Fifth. Charges for Rent. It appears that the firm owned a part of the land and buildings used in the business and hired the other part, paying for the latter a rental of $400 per month. For the use of the part that was owned by the defendants no charge was made on the books, so that the plaintiff, to the extent of his proportionate interest in the profits, had the benefit of that property without expense. The defendants claim that a sum equal to 10 per cent. of the cost of the property should have been charged off each year as an equivalent for rental, and they have accordingly, in making up the account, charged off the sum of $7,709.74 for that purpose. I am of the opinion that they were clearly entitled to make a charge of that character, but while it may be that the amount specified is the proper sum to be so charged, there is no evidence in the case upon that point, either as to the propriety of charging that particular sum or as to what would be a proper sum or percentage to be charged off for the purpose mentioned. On the evidence as it stands, the charge in question for the purposes of the motion under consideration must therefore be disallowed.

Sixth. Depreciation of Original Plant. It seems that while a sum equal to 10 per cent. of the balance at the end of each year of cask account, stock account, and improvement account was charged off each year for wear and tear, no such deduction was ever made for the plant originally purchased by the defendants from Mr. Whitney. The bill of sale, and Mr. Lyon's testimony, show that the amount paid for the property was $45,000, and the testimony also shows that if 10 per cent. of that sum had been charged off each year the total amount so charged off would have been $29,309.45. There is certainly no reason why the original plant should have been carried on the books for 10 years at its original cost. The charge is sustained, not only by a consideration of the subject as a matter of business propriety and fairness, but also by a fair reading of the testimony of Mr. Lyon and Mr. Waddell. They substantially admit the propriety of such a charge, but claim that $25,000 of the original cost was for "good will" or "royalty," of which there is no evidence. The charge, therefore, claimed by the defendants of $29,309.45, for wear and tear of the original plant, should be allowed.

Seventh. Items of Schwarzwaelder & Clark. These items are charged off by the defendants,—one amounting to $1,394.44, and the other to $1,594.01. As the case stands, there is no evidence to sustain them, and for the purposes of the present motion they must be disregarded.

Eighth. Inventory. The plaintiff claims that in making the inventory at

the end of the last year the defendants undervalued the stock on hand by the sum of $20,502.56. The contract between the parties provided that the stock should be taken at the end of last year in the same manner as in previous years. In previous years the stock had been valued at the estimated selling price. The defendants made it up for the close of the last year at cost price, and the plaintiff claims that, if taken as it had been in previous years, it would have exceeded the sum at which it was taken by the amount above stated, making a difference to the plaintiff of $2,050.25. The supplemental statement in the defendants' books, in which they credit the plaintiff with the estimated profit on the sale of stock on hand, gives the plaintiff credit for all which he can fairly claim. He would be fairly chargeable with the cost of manufacture and of sale and delivery, as stated in the supplemental statement. There is nothing to show that the inventory was not fairly taken, or that the plaintiff is entitled to any credit for the stock on hand which the defendants have not allowed to him, so that the plaintiff's claim of $2,050.25 in that regard must be disallowed. The amounts with which the plaintiff has sought to surcharge the defendants' account, and which I have decided were properly charged in defendants' books, are as follows: For taxes, etc., $4,950.52; repairs to casks, etc., $14,263.48; rebates, etc., $4,000; bad debts, $4,593.84; inventory of last year, $20,502.56; aggregating $48,310.40. I have also decided that the account is chargeable for wear and tear of the original plant with $29,309.45, making a total of $77,619.85, of which 10 per cent., or $7,761.98, is chargeable to the plaintiff, an amount exceeding by about $1,090 the sum claimed by the plaintiff. It follows that the defendants' motion should be granted, and the complaint is therefore dismissed, with costs.                    Wm. C. Traphagen, Referee.
New York, March 20, 1891.

Argued before FREEDMAN and GILDERSLEEVE, JJ.

J. McMahon, for plaintiff.

A. J. Dittenhoefer, for defendant Shook.

Gratz Nathan, for defendant James Everard.

PER CURIAM. The judgment should be affirmed, with costs, upon the opinion filed by the referee.

---

(4 Misc. Rep. 493.)

## SLACER v. FIELD ENGINEERING CO.

(Superior Court of Buffalo, General Term. July 14, 1893.)

DANGEROUS MACHINERY—ASSUMPTION OF RISK.
  Plaintiff, while standing on a step between an engine and the fly wheel, around or between which there was no guard, examining the bearings, slipped on some oil thrown on the steps by the machinery, and, falling into the wheel, was injured. He had been employed about the engine 8 or 10 days. He was not a mechanic or skilled workman, though he had for a number of years worked round machinery and engines, but never round an engine of this kind. He was never cautioned about the employment. *Held*, that it could not be said, as a matter of law, that the danger was so apparent to him that he had assumed the risk.

Exceptions from trial term.

Action by William D. Slacer against the Field Engineering Company for personal injuries. A nonsuit was granted. Plaintiff moves for a new trial on case and exceptions ordered to be heard at the general term in the first instance. Motion granted.

Argued before TITUS, C. J., and HATCH, J.

Quinby, Meads & Rebadow, for plaintiff.

C. S. Crosser and C. N. Bushnell, for defendant.